IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORA L.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, Commissioner | : | |
| of Social Security[2] | : | NO. 25-2714 |

**MEMORANDUM AND ORDER**

CAROLINE GOLDNER CINQUANTO, U.S.M.J. November 23, 2026

Plaintiff filed this appeal from the Commissioner's decision denying her application for disability insurance benefits ("DIB"). For the reasons that follow, I conclude that the Administrative Law Judge ("ALJ") violated his duty to develop the record and that his decision is not supported by substantial evidence. I will remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on August 8, 2022. Tr. at 89, 171.[3] Plaintiff alleged disability beginning on June 15, 2022, as a result of lupus, breast cancer, chronic

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first name and last initial. See Standing Order – In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this case. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[3]In order to be eligible for DIB, Plaintiff must establish that she became disabled prior to the expiration of her insured status or date last insured ("DLI"). 20 C.F.R.

anal fissures, and third-degree hemorrhoids with hemorrhage of the anus and rectum. Id. at 174, 192.[4] Plaintiff's application was denied initially, id. at 108-09, and on reconsideration. Id. at 99-106.

On June 11, 2023, Plaintiff requested an administrative hearing. Tr. at 113-14. After holding a hearing on November 9, 2023, id. at 46-88, the ALJ issued an unfavorable decision on April 23, 2024. Id. at 28-40. The Appeals Council denied Plaintiff's request for review on April 29, 2025, id. at 1-3, making the ALJ's April 23, 2024 decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff sought review in federal court on May 28, 2025, Doc. 1, and the matter is now fully briefed. Docs. 8, 15-16.[5]

## II. LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is

---

§ 404.131(b). Here, the Certified Earnings Record establishes that Plaintiff's DLI is December 31, 2027. Tr. at 176. Although the ALJ found that Plaintiff's DLI is December 31, 2026, id. at 30, 51, the discrepancy is immaterial at this point as Plaintiff has not reached her DLI.

[4]Plaintiff identified these conditions in her Disability Report completed on December 11, 2022. Additionally, at the administrative hearing, Plaintiff explained that she had recently been diagnosed with fibromyalgia, causing constant "[p]ain all over from the top of [her] head to the bottom of [her] feet." Id. at 67.

[5]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 4.

whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claims

In his April 23, 2024 decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 15, 2022. Tr. at 31. At step two, the ALJ found that Plaintiff had the following severe impairments:

chronic constipation and dyssynergic defecation,[6] intestinal metaplasia,[7] fibromyalgia,[8] lupus,[9] lumbar degenerative disc disease ("DDD"), asthma, anemia, obesity, and a history of globe rupture and vitreous detachment[10] of the right eye with resulting visual acuity decreases. Id. at 31. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Id. at 32. The ALJ found that Plaintiff has the RFC to perform light work, except she can frequently reach, handle, finger, and feel with the bilateral upper extremities, and use far acuity; occasionally use foot controls with the bilateral extremities, balance, stoop, kneel, crouch, crawl, climb ramps and stairs, operate a motor vehicle, and have concentrated exposure to atmospheric conditions, extreme

---

[6]Dyssynergic defecation "occurs when the muscles and nerves in the pelvic floor fail to coordinate correctly to have a bowel movement (pelvic floor dysfunction). It can cause or be caused by chronic constipation." See https://my.clevelandclinic.org/health/diseases/23138-anismus-dyssynergic-defecation (last visited Nov. 2, 2026).

[7]Metaplasia is "the change in the type of adult cells in a tissue to another form of adult cells that are not normal for that tissue." Dorland's Illustrated Medical Dictionary, 33d ed. (2020) ("DIMD"), at 1128.

[8]Fibromyalgia is "pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points." DIMD at 696.

[9]Lupus is the "name formerly given to numerous types of localized destruction or degeneration of the skin caused by cutaneious disease." DIMD at 1065. Tumidus lupus is a type of lupus vulgaris ("the most common, severe, and variable form of cutaneous tuberculosis . . . [characterized by] a reddish brown plaque on the skin surrounded by papules and nodules") whose lesions consist of localized, soft, edematous patches somewhat resembling keloids." DIMD at 1066.

[10]Vitreous detachment is "separation of the vitreous body from its attachments, especially from the retina." DIMD at 495.

cold, heat, wetness, and humidity; and never climb ladders, ropes, or scaffolds, or have exposure to vibration or hazards such as unprotected heights or dangerous moving mechanical parts. Id. at 34. At the fourth step, the ALJ found that Plaintiff is capable of performing her past relevant work as an administrative assistant. Id. at 38. In addition, based on Plaintiff's age, education, experience, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the sedentary jobs of account clerk, addresser, and table worker. Id. at 39; see also id. at 83-84 (VE testimony). As a result, the ALJ found that Plaintiff was not disabled. Id. at 40.

Plaintiff argues that the ALJ failed to develop the record regarding Plaintiff's fibromyalgia. Doc. 8 at 6-10. In addition, she argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to (1) address relevant evidence including Plaintiff's loss of vision in her left eye, (2) properly consider Plaintiff's fibromyalgia pursuant to Social Security Ruling 12-2p, (3) properly consider the medical opinion evidence, (4) properly consider the non-exertional aspect of Plaintiff's pain and loss of control over her evacuation functions, and (5) properly consider Plaintiff's testimony. Id. at 10-30. Defendant responds that the ALJ adequately developed the record and the ALJ's decision was supported by substantial evidence. Doc. 15. Plaintiff provides further support for her claims in a Reply. Doc. 16.

### B. Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on January 7, 1977. Tr. at 62. She completed one year of college and received a certificate in business administration. Id. She has past relevant work as an administrative assistant in a school district office. Id. at 62. Plaintiff was 45

years old when she alleges she became disabled on June 15, 2022, and 47 years old at the time of the ALJ's April 23, 2024 decision. Id. at 62.

At the hearing, Plaintiff testified as follows. She stopped working because she had constant pain, vision loss, and colon bleeding through her rectum. Tr. at 64. When sitting for a prolonged time, Plaintiff would "bleed out onto the seat . . . in the office." Id. at 65. In addition, she would have accidents where she defecated on herself once or twice a month. Id. at 66. She also suffered from abdominal pain three times a week, lasting for about 30 minutes. Plaintiff took medication to alleviate the pain, which was partially effective. Id. at 66.

At the time of the hearing, Plaintiff testified that she had recently been diagnosed with fibromyalgia which caused constant pain throughout her body. Tr. at 67. As a result, she suffered from pain from the waist down when she stood for longer than 20 minutes. In addition she suffered from lower back pain after walking for "a couple of minutes" or sitting for 15 minutes. Id. at 68-69. To avoid the pain, Plaintiff would lie down most of the day. Id. She could lift half a gallon of milk, id., but had difficulty using her hands to grip and open containers. Id. at 73. In addition, Plaintiff could not see far away. Id. at 70.

Plaintiff testified she suffered from panic attacks, where she lost consciousness and did not remember what happened. Tr. at 71. She had anxiety and her anxiety increased when she was in large groups. Id. She did not adapt well to change and just "shut[s]down[,] try[ing] to avoid even communicating with anyone." Id. at 72. Plaintiff blamed her anemia for her lack of energy. Id.

Plaintiff's husband also testified at the hearing, describing his wife's condition. Plaintiff required help with the dishes and the laundry. Tr. at 75. She no longer walked to the corner store; she either took the car or gave her husband a shopping list. Id. He described Plaintiff as "fatigued" and constantly changing position to be comfortable. Id. at 76. His daughter goes to their house when Plaintiff's husband is at work to be there to help Plaintiff. Id. at 77. Plaintiff's husband described talking to his wife and her forgetting the conversation a day or two later. Id. at 78.

A VE also testified at the administrative hearing. Tr. at 81-86. The VE characterized Plaintiff's job as an administrative assistant as sedentary as it is normally performed, but light as Plaintiff performed the job. Id. at 82. The ALJ asked the VE to consider someone of Plaintiff's age, education, and background, who could perform light work, with the other limitations contained in the ALJ's RFC assessment, see supra at 4-5. Id. at 82-83. The VE testified that such an individual could perform Plaintiff's job as an administrative assistant. Id. at 83. If Plaintiff would occasionally require the use of a cane to ambulate, the VE stated that Plaintiff could perform the job of administrative assistant as listed in the Dictionary of Occupational Titles, but not as she performed the job. Id. The ALJ then asked the VE if sedentary work would be available (including the occasional use of the cane). Id. The VE identified the jobs of account clerk, addresser, and table worker. Id. at 84. Additionally, the VE testified that those three positions remained available if the person had to alternate between sitting and standing every 30 minutes, provided that the person could remain on task while alternating positions. Id. at 84. If the person were off task 20% of the time, or required 2 unscheduled breaks for 30

minutes each, or would be absent 2 or more days per month, the VE testified that any of these limitations would be work preclusive. Id. at 84-85.

## C. Medical Records

### 1. Treatment Providers

Plaintiff has a history of breast cancer for which she had a lumpectomy and a cyst removed in 2018. Tr. at 677; see also id. at 746-47 (post-operative note), 818 (post-op visit), 352 (consultative examination history). Plaintiff was also treated for tumid lupus prior to her alleged onset date and prescribed clobetasol topical ointment.[11] Id. at 239.

Plaintiff injured her right eye as a child and was diagnosed with a globe rupture of the right eye. See tr. at 569 (medical history), 351 (medical history by consultative examiner). On December 22, 2021, Plaintiff reported to Alina Y. Yang, M.D., at Jefferson's emergency department, that she was having flashes and floaters in her right eye. Id. at 570. Dr. Yang diagnosed a posterior vitreous detachment. Id. at 571-72; see also id. at 254-58.

Plaintiff has a history of hemorrhoids and anal fissures. See tr. at 277 (treatment history). When Plaintiff began treating with gastroenterologist Zachary Reichenbach, M.D., for chronic constipation on November 2, 2022, she complained of rectal bleeding which began in 2014. Id. at 277. Dr. Reichenbach ordered bloodwork, an EGD (upper

[11] Clobetasol topical ointment is used to treat the itching, redness, dryness, crusting, scaling, inflammation, and discomfort of various scalp and skin conditions. See https://www.drugs.com/clobetasol-topical.html (last visited Nov. 2, 2026).

GI scope), and colonoscopy, and prescribed Citroma and GoLYTELY.[12] Id. at 280. On March 2, 2023, after reviewing the test results, the doctor diagnosed Plaintiff with chronic constipation, dyssynergic defecation, gastric intestinal metaplasia, epigastric pain, hematochezia,[13] and GERD. Id. at 297. Dr. Reichenbach noted that the Glycolax[14] "works very well but causes diarrhea and even an episode of fecal incontinence." Id. at 294. The doctor also indicated that Plaintiff's rheumatologist had started her on ibuprofen and meloxicam, increasing her epigastric pain.[15] Id. at 290. The doctor added Carafate and increased Plaintiff's Protonix.[16] Id. at 296.

---

[12]Citroma is used as a supplement to maintain adequate magnesium in the body and used as a laxative to treat occasional constipation. See https://www.drugs.com/mtm/citroma.html. GoLYTELY is a laxative solution that stimulates bowel movements and contains minerals to replace electrolytes that are passed from the body in the stool. See https://www.drugs.com/mtm/golytely.html (last visited Nov. 2, 2026).

[13]Hematochezia is "the presence of blood in the feces." DIMD at 822.

[14]Glycolax is a laxative solution that increases the amount of water in the intestinal tract to stimulate bowel movements used to treat constipation. See https://www.drugs.com/mtm/glycolax.html (last visited Nov. 2, 2026).

[15]Meloxicam is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis. See https://www.drugs.com/meloxicam.html (last visited Nov. 2, 2026).

[16]Carafate is an anti-ulcer medication used to treat an active duodenal ulcer by sticking to ulcer sites and protecting them from acids, enzymes, and bile salts. See https://www.drugs.com/carafate.html. Protonix is a proton pump inhibitor used to treat erosive esophagitis (damage to the esophagus from stomach acid caused by gastroesophageal reflux disease. See https://www.drugs.com/protonix.html (last visited Nov. 2, 2026).

On May 4, 2023, Salvatore Caminito, M.D., performed an ultrasound of Plaintiff's abdomen, ordered by Kayla Blaker. Tr. at 371.[17] Based on the results, Dr. Caminito diagnosed Plaintiff with congenital cystic disease of the liver. Id. On the same day, at the request of NP Blaker, a series of lumbar x-rays showed degenerative hypertrophy of the lower lumbar facets and slight disc space narrowing at L4-L5 and L5-S1, resulting in Anthony Limnerakis, M.D., diagnosing Plaintiff with lumbago. Id. at 373.

On May 6, 2023, Plaintiff reported to the emergency department at Temple University Hospital – Jeanes Campus ("Jeanes E.D.") that she had sharp abdominal pain and pressure when she voids. Tr. at 1036, 1041. Carly Blick, M.D., treated Plaintiff with Zofran and morphine and discharged her.[18] Id. at 1055. On May 22, 2023, Elizabeth Listiani Tan, M.D., found the Plaintiff's kidneys unremarkable after a complete renal ultrasound ordered by NP Blaker. Id. at 374.

On September 24, 2023, Maura Sammon, M.D., treated Plaintiff at the Jeanes E.D. for vision changes, photophobia, facial numbness, and left-sided arm heaviness. Tr. at 866. Amanda Rubin, D.O., administered a "[t]rial migraine cocktail [of] [R]eglan,

[17] Although she is identified as Kayla Blaker, M.D., in the Jefferson Health testing results, see tr. at 371, 373, it appears that Kayla Blaker is a Nurse Practitioner. Id. at 319. She is identified as Plaintiff's primary care provider or the referring provider several times in the record. See id. at 277, 295, 311, 319, 334, 353, 369, 371, 373-74, 547, 551, 553, 556, 560.

[18] Zofran (generic ondansetron) is used to prevent nausea and vomiting. See https://www.drugs.com/zofran.html. Morphine is a potent opioid analgesic used to treat acute or severe pain. See https://www.drugs.com/morphine.html (last visited Nov. 2, 2026).

[B]enadryl, [T]oradol, and [T]ylenol," improving Plaintiff's symptoms and she was released.[19] Id. at 869, 890, 915.[20]

2. Consultants and State Agency Physicians

On March 3, 2023, consultative examiner Anne M. Greenberg, M.D., conducted an Internal Medicine Examination, after which Dr. Greenberg diagnosed Plaintiff with depression, anxiety, panic attacks, remote history of globe rupture of the right eye with resulting poor visual acuity, history of posterior vitreous detachment of the right eye, systemic lupus, fibromyalgia, history of breast cancer, status post left-sided lumpectomy, and currently well-controlled asthma. Tr. at 355. During the examination, Dr. Greenberg noted that Plaintiff's gait was normal and her squat was 50% full. Id. at 353. Plaintiff's joints were stable and nontender, but she had 12 positive trigger points. Id. at 354. She had full strength in her upper and lower extremities. Id. Her hand and finger dexterity were intact and she had full grip strength. Id.

Dr. Greenberg opined that Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry 11-20 pounds, sit for 8 hours in 4-hour increments, stand for 2

---

[19]Reglan increases muscle contractions in the upper digestive tract, speeding up the rate at which the stomach empties into the intestines which may help with nausea. See https://www.drugs.com/reglan.html. Toradol (generic ketorolac) is a nonsteroidal anti-inflammatory drug used short-term to treat moderate to severe pain. See https://www.drugs.com/toradol.html (last visited Nov. 2, 2026).

[20]There are references to Plaintiff's mental health in the record. See tr. at 251 (diagnoses of major depressive disorder on 1/19/21, 10/20/20, 3/27/19, 3/9/18), 278 (anxiety diagnosed 8/23/10), 279 (11/2/22 – current medication includes diazepam and fluoxetine), 289 (3/2/23 – past medical history of anxiety), 875 (9/24/23 – reports increased panic attacks). However, no mental health treatment notes are included.

hours in 40-minute increments, and walk for 1 hour in 20-minute increments. Tr. at 356-57. She could frequently use her hands and arms for reaching, handling, fingering, feeling, and pushing/pulling; and could occasionally operate foot controls using either foot. Id. at 358. Dr. Greenberg found Plaintiff could frequently climb stairs and ramps, and occasionally climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. Id. at 359.

With respect to Plaintiff's physical impairments, at the initial consideration stage on March 10, 2023, State agency reviewer Minda Uy-Barreta Bermudez, M.D., found from her review of the record that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit for 6 hours, and stand and/or walk for 6 hours in an 8-hour workday. Tr. at 93-94. Dr. Bermudez found Plaintiff could occasionally climb ladders, ropes, and scaffolds; and could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Id. at 94.

With respect to Plaintiff's mental health impairments, at the initial consideration stage, State agency reviewer Marci Cloutier, Ph.D., found that Plaintiff suffers from anxiety and obsessive-compulsive disorders that are not severe, causing only mild limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. at 92.

At the reconsideration stage on June 6, 2023, State agency reviewer Esther Marie Kim, M.D., found from her review of the record, much the same as Dr. Bermudez, that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds,

sit for 6 hours and stand and/or walk for 6 hours in an 8-hour workday. Tr. at 103. Dr. Kim's postural limitations were identical to Dr. Bermudez's. Id. at 103.[21]

**D. Claims**

1. Failure to Develop the Record

Plaintiff's overarching claim is that the ALJ failed to develop the record, specifically with respect to treatment notes from Plaintiff's treating rheumatologist. Doc. 8 at 6-10. Defendant responds that the ALJ sufficiently developed the record relying on "hundreds of pages [of] medical records from Plaintiff's various treatment providers." Doc. 15 at 4.

It is clear that an ALJ has a duty to develop the record in social security cases and a heightened duty when the claimant appears without counsel at the administrative hearing.

> While a claimant bears the burden of proving [her] disability . . . , the Third Circuit "has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." Dobrowolsky [v. Califano], 606 F.2d [403,] 406-07 [(3d Cir. 1979)]. "ALJs have a duty to develop a full and fair record in social security cases," Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995), and this duty is heightened when the claimant appears at the hearing without the benefit of counsel. . . . When an ALJ "has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination," remand is appropriate. Comiskey [v. Astrue], [Civ. No. 09-252,] 2010

[21]There was no mental health opinion on reconsideration. See tr. at 99-106.

> WL 308979, at *7 [(E.D. Pa. Jan. 27, 2010)] (quoting Jozefick v. Shalala, 854 F.Supp. 342, 349 (M.D. Pa. 1994)).

Rosa v. Colvin, 956 F. Supp.2d 617, 620 (E.D. Pa. 2013); see also Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (noting that ALJ's investigation must be "not wholly inadequate under the circumstances").

Here, at the November 9, 2023 hearing, Plaintiff, appearing without counsel, testified that she had recently been diagnosed with fibromyalgia[22] and said that it caused "[p]ain all over from the top of [her] head to the bottom of [her] feet," limiting her ability to stand, walk, and sit. Tr. at 67-68. Earlier in the hearing, when the ALJ reviewed the records with Plaintiff, Plaintiff said she did not know if the ALJ had the treatment notes from her rheumatologist, identified as Dr. Moody. Tr. at 59. Plaintiff followed up that "Everything's in Temple," id., and the ALJ indicated that he had records from Temple, but would get updated records. Id. No rheumatology treatment notes appear in the record; however, a careful review of the record **does** identify Plaintiff's rheumatologist as Nidhi Mody, D.O. Dr. Mody appears as the prescribing doctor for Plaintiff's prescriptions for meloxicam and Plaquenil when she was seen at the Jeanes E.D., on May 6, 2023, and September 24, 2023. Tr. at 848, 1038. Although Dr. Mody's treatment records were not contained in the records provided by Temple, the doctor's identity and the correct spelling of her name certainly were, allowing the ALJ to locate and contact

[22]Dr. Reichenbach, Plaintiff's treating gastroenterologist, noted on March 2, 2023, that Plaintiff's rheumatologist had recently started Plaintiff on ibuprofen and meloxicam, causing an increase in Plaintiff's epigastric pain. Tr. at 290.

the doctor for the records. Defendant argues that "the ALJ adequately developed the record because it contained hundreds of pages [of] medical records from Plaintiff's various treatment providers." Doc. 15 at 4.[23] However, considering Plaintiff's testimony concerning the effects of her fibromyalgia on her abilities, consultative examiner Dr. Greenberg's notation of 12 positive trigger points (bilateral trapezius, bilateral supraspinatus, bilateral gluteal, bilateral greater trochanter, bilateral second ribs, right lateral epicondyle, and left knee), and the complete lack of rheumatological records regarding Plaintiff's treatment for fibromyalgia, it was incumbent upon the ALJ to obtain these records to assess the limiting effects of fibromyalgia. See Isaac v. Astrue, Civ. No. 08-1991, 2009 WL 1492277, at *13 (W.D. Pa. May 28, 2009) (duty to develop record violated where ALJ aware Plaintiff was receiving treatment from a mental health provider and failed to attempt to obtain provider's treatment records); Jozefick v. Shalala, 854 F. Supp. 342, 349 (M.D. Pa. 1994) (remand appropriate where ALJ "failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination").[24]

---

[23]I note that a good portion of the record is dedicated to the diagnosis of, surgery for, and treatment for Plaintiff's breast cancer that predated Plaintiff's alleged disability onset date, see tr. at 398-545, and one hospital admission consumes 190 pages. See id. at 845-1035. The court is not concerned with the quantity of pages produced, but that the ALJ has satisfied his heightened duty to develop the record in the case of an unrepresented Plaintiff.

[24]In considering the Listings, the ALJ noted that he "considered the effects of [Plaintiff's] fibromyalgia signs and symptoms under the musculoskeletal body system, neurological body system, and disorders of the immune system. A careful review of the objective medical evidence of record fails to provide any evidence that would meet or medically equal any of the [L]istings . . . ." Tr. at 33. It is difficult to fathom how the

Moreover, there are no records from Plaintiff's primary care provider during the relevant period. As previously mentioned, NP Blaker is identified as Plaintiff's primary care provider or the referring provider several times. See tr. at 277, 295, 311, 319, 334, 353, 369, 371, 373-74, 547, 551, 553, 556, 560. Yet, there are no treatment notes from NP Blaker. NP Blaker's contact information appears multiple times in the record, including in consultative examiner Dr. Greenberg's report, id. at 353, 368, and letters written by Dr. Reichenback, updating the referring provider on Plaintiff's gastroenterology treatment. Id. at 319, 334. In addition, there are no mental health treatment notes in the record, just notations that Plaintiff had been prescribed diazepam and fluoxetine, had a history of anxiety, and reported increased panic attacks.[25] See id. at 251, 278, 279, 289, 875. NP Blaker's treatment notes could explain Plaintiff's mental

---

ALJ could make such a determination without the treatment notes from Plaintiff's treating rheumatologist.

Similarly, the rheumatological evidence was essential to the consideration of Plaintiff's subjective complaints. See tr. at 36 ("Considering the medical evidence on its face, [Plaintiff's] subjective allegations are not entirely supported by the record."). Plaintiff testified that fibromyalgia caused her significant pain and limitation. Without the relevant treatment records the ALJ's conclusion has little if any foundation. Additionally, the State Agency consultants did not have the benefit of these records in determining Plaintiff's RFC. Thus, the failure to obtain these records undermined the ALJ's consideration of the opinion evidence.

[25] Diazepam (brand name Valium) is a benzodiazepine used to treat anxiety disorders. Fluoxetine (brand name Prozac) is an antidepressant used to treat MDD, obsessive-compulsive disorder, and panic disorder. See https://www.drugs.com/fluoxetine.html (last visited Nov. 2, 2026).

health treatment to assess the impact her mental health impairments have on her ability to work.

In sum, despite Defendant's contention that the ALJ fulfilled his duty to develop the record because it contains hundreds of pages of treatment notes, the record in this case is woefully inadequate to determine the limiting effects of Plaintiff's fibromyalgia and anxiety. The record does identify treatment providers who likely can fill those evidentiary gaps. Thus, remand is appropriate to develop the record and reconsider Plaintiff's RFC in light of the fully-developed record.

2. Remainder of Plaintiff's Claims

I have no need to address Plaintiff's claims further as the ALJ will have to reevaluate the evidence and Plaintiff's RFC after fully developing the record. See Butler v. Kijakazi, 587 F. Supp.3d 223, 231 (E.D. Pa. 2022) (citing Steininger v. Barnhart, Civ. No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. 2005) (not addressing additional arguments because ALJ's findings may be revised after a new hearing)).[26]

## IV. CONCLUSION

The ALJ failed to carry out his heightened duty to develop the record where Plaintiff was not represented at the time of the administrative hearing. Although Plaintiff misspelled or mispronounced her treating rheumatologist's name, the doctor

[26]To the extent Plaintiff complains that the ALJ failed to consider evidence of left eye vision loss, I note that the evidence upon which she relies indicates the condition was acute and resolved with Reglan. Tr. at 882. Again, the treatment notes from Plaintiff's primary care provider would aid in the determination of whether the symptoms Plaintiff experienced on September 24, 2023, resolved, returned, or were recurrent.

was identifiable from the records produced and it does not appear that the ALJ attempted to contact the treating rheumatologist, despite Plaintiff's complaints of debilitating pain caused by fibromyalgia. In addition, no records from Plaintiff's primary treatment provider are contained in the administrative record despite her contact information appearing in the record several times including in the consultative examiner's report. The absence of these records and the ALJ's failure to attempt to obtain them infected the ALJ's consideration of the evidence and Plaintiff's subjective complaints, requiring remand.

An appropriate Order follows.